UNITED STATES DISTRICT COURT

DISTRICT OF HAWAII

| | |
|---|---|
| MICHELLE SHORES AND DANE SHORES, INDIVIDUALLY AND ON BEHALF OF THEIR MINOR SON B.S.;<br><br>          Plaintiffs,<br><br>     vs.<br><br>NIKITA HAY, PSY.D.; KURT HUMPHREY, M.D.;  JANE AND/OR JOHN DOES 1-25,  DOE ENTITIES 1-10,<br><br>          Defendants. | CIV. NO. 21-00455 LEK-WRP |

**ORDER: DENYING DEFENDANTS' MOTION TO STRIKE; DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT; AND GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

On April 24, 2023, Plaintiffs Michelle Shores ("Mrs. Shores") and Dane Shores ("Mr. Shores"), individually and on behalf of their minor son B.S., (collectively "Plaintiffs") filed their Motion for Partial Summary Judgment as to Liability ("Plaintiffs' Motion"). [Dkt. no. 31.] Also on April 24, 2023, Defendants Nikita Hay, Psy. D., ("Dr. Hay") and Kurt Humphrey, M.D., ("Dr. Humphrey" and collectively "Defendants") filed their Motion for Summary Judgment on All Claims ("Defendants' Motion for Summary Judgment"). [Dkt. no. 34.] On July 7, 2023, Defendants filed their memorandum in opposition to Plaintiffs' Motion ("Opposition to Plaintiffs' Motion"). [Dkt. no. 48.] On July 8, 2023, Plaintiffs filed their memorandum in opposition to

Defendants' Motion for Summary Judgment ("Opposition to
Defendants' Motion for Summary Judgment").  [Dkt. no. 50.]  On
July 14, 2023, Defendants and Plaintiffs filed their respective
replies ("Defendants' Reply" and "Plaintiffs' Reply").  [Dkt.
nos. 55, 56.]

 The Court found these matters suitable for disposition
without a hearing pursuant to Rule LR7.1(c) of the Local Rules
of Practice for the United States District Court for the
District of Hawaii ("Local Rules").  See EO, filed 7/25/23 (dkt.
no. 60).  On July 27, 2023, the Court issued an entering order
informing the parties of its summary ruling denying Plaintiffs'
Motion and granting Defendants' Motion for Summary Judgment.
[Dkt. no. 61.]  This Order supersedes that entering order.
Plaintiffs' Motion is hereby denied, and Defendants' Motion for
Summary Judgment is hereby granted in part and denied in part
for the reasons set forth below.

## BACKGROUND

### I.   Relevant Allegations

 Mrs. Shores and Mr. Shores ("Parents") are B.S.'s
adoptive parents.  [Complaint for Declaratory Relief and Damages
("Complaint"), filed 11/22/21 (dkt. no. 1), at ¶ 8.]  B.S.
suffers from numerous mental and emotional health conditions and
is eligible for services and programs under the Individuals with
Disabilities Education Act ("IDEA").  See id. at ¶ 9.

Plaintiffs allege the following claims against Defendants: (1) a claim alleging violations of the IDEA and Section 504 of the Rehabilitation Act ("the Rehab Act"), together with a 42 U.S.C. § 1983 claim alleging violations of B.S.'s due process rights under the Fifth and Fourteenth Amendments of the United States Constitution, and Article I of the Hawai`i Constitution ("Count I"); and (2) a medical malpractice claim ("Count II"). Plaintiffs seek declaratory judgment, general and special damages, punitive and/or exemplary damages, reimbursement of costs and expenses, and any other appropriate relief.  Dr. Hay is sued in her individual and official capacity while Dr. Humphrey is sued only in his official capacity.  See id. at ¶¶ 3-4.

## II. <u>Relevant Facts</u>

During the 2019-2020 academic school year ("SY 2019-20"), B.S. was a student within the Hawai`i State Department of Education ("DOE"), and the DOE was responsible for providing B.S. with a public education.  See Defs.' Concise Statement of Material Facts ("Defs. CSOF"), filed 4/24/23 (dkt. no. 35), at ¶¶ 1-3; Pltfs.' Concise Statement of Facts in Opposition to Defendants' Motion for Summary Judgment ("Pltfs.' Responsive CSOF"), filed 7/8/23 (dkt. no. 51), at pg. 2 (admitting Defs.'

¶¶ 1-3).[1]  The DOE developed an Individualized Education Program
("IEP") for B.S., which was effective from December 10, 2019 to
September 10, 2020.  B.S.'s IEP stated that he would receive
services at a private residential facility, but it did not state
that he required specialized treatment in a secure residential
treatment program on the mainland.  See Defs.' CSOF at ¶¶ 4-6;
Pltfs.' Responsive CSOF at pg. 2.

During SY 2019-20, Dr. Hay and Dr. Humphrey were
employed by the Hawai`i State Department of Health ("DOH") Child
and Adolescent Mental Health Division ("CAMHD").  During some of
SY 2019-20, B.S. received his education and related IEP services
at Detroit Behavioral Institute Capstone Academy ("Capstone") in
Michigan.  See Defs.' CSOF at ¶¶ 11-13; Pltfs.' Responsive CSOF
at pg. 2.  "By at least December of 2019, B.S.'[s] parents . . .
were aware that B.S.'[s] placement at Capstone required
termination."  [Defs.' CSOF at ¶ 14; Pltfs.' Responsive CSOF at
pg. 2.]

Around November 2019, B.S.'s IEP team began efforts to
place B.S. in another treatment program.  Dr. Hay evaluated B.S.
and submitted a report to Parents and the IEP team.  See Pltfs.'
Concise Statement of Facts in Support of Motion for Partial
Summary Judgment as to Liability ("Pltfs.' CSOF"), filed 4/24/23

---

[1] Plaintiffs admitted paragraphs one through fourteen of
Defendants' CSOF.  See Pltfs.' Responsive CSOF at pg. 2.

(dkt. no. 32), at ¶¶ 3-4; Defs.' Separate Concise Statement of Material Facts in Opposition to Plaintiffs' Motion for Summary Judgment as to Liability ("Defs.' Responsive CSOF"), filed 7/7/23 (dkt. no. 48-1), at ¶¶ 3-4 (partially disputing Pltfs.' ¶¶ 3-4 on other grounds).  From December 2019 through February 2020, Parents executed consent and authorization forms to allow Dr. Hay and Dr. Humphrey to initiate inquiries and applications to alternative residential treatment programs.  Between November 2019 and January 2020, B.S.'s IEP team met several times to discuss potential placements in alternative residential treatment programs.  See Pltfs.' CSOF at ¶¶ 7-8; Defs.' Responsive CSOF at ¶¶ 7-8 (partially disputing Pltfs.' ¶¶ 7-8 on other grounds).

In a January 30, 2020 letter, signed by Dr. Humphrey for Dr. Hay, Parents were informed that B.S. was going to be discharged from Capstone, and Capstone requested that B.S. be discharged as soon as possible.  The letter stated that the DOH would place B.S. in the CAMHD's Residential Crisis Stabilization Program ("RCSP") if Parents consented.  If they did not consent, then B.S. would be returned to Parents' care.  The change was to take effect on February 9, 2020.  See Defs.' CSOF, Decl. of Kurt Humphrey ("Humphrey Decl."), Exh. E (Notice of Action, dated 1/30/20 ("Notice of Action")).

In an email dated January 31, 2020, Ms. Shores emailed Dr. Hay stating that, among other things, "we want to talk to **DOE** since the time is so short on [B.S.'s] placement [at Capstone] and the directive from [Capstone] that he should be moved [as soon as possible]." [Defs.' CSOF, Decl. of Nikita Hay ("Hay Decl."), Exh. D (emails between Dr. Hay and Mrs. Shores all dated January 31, 2020) at 1 (emphasis added).]

An Interstate Compact on the Placement of Children ("ICPC") Request form for B.S. was signed by the receiving state – *i.e.*, Michigan – on June 29, 2018.  See Defs.' CSOF, Decl. of Janet Ledoux ("Ledoux Decl."),[2] Exh. F ("B.S.'s ICPC Request") at 1.  According to B.S.'s ICPC Report on Child's Placement Status ("B.S.'s ICPC Report"), signed on October 29, 2020, B.S.'s placement at Capstone was terminated on February 13, 2020, and the report indicated he was transferred to Hawai`i.  See id. at 2; see also Humphrey Decl., Sealed Exh. C (Detroit Behavioral Institute Capstone Academy – Residential Discharge Summary, stating B.S. was released from Capstone on February 12, 2020).[3]

When B.S. arrived in Hawai`i, Plaintiffs did not take B.S. back into their custody, and Dr. Hay notified Child Welfare

---

[2] Janet Ledoux is an Administrative Officer for CAMHD.  See Ledoux Decl. at ¶ 1.  She is CAHHD's custodian of records for purposes of this case.  See id. at ¶ 3.

[3] Exhibit C was filed under seal on April 25, 2023.  [Dkt. no. 39.]

Services ("CWS").  CWS arranged for B.S. to be admitted into the Kapiolani Medical Center for Women and Children ("KMC").  See Pltfs.' CSOF at ¶¶ 14-15; Defs.' Responsive CSOF at ¶¶ 14-15 (partially disputing Pltfs.' ¶¶ 14-15 on other grounds).  On March 5, 2020, Michelle E. Nakata ("Nakata") – a State of Hawai`i ("State") Deputy Attorney General – replied to an email from Plaintiffs' counsel informing Nakata that B.S. "eloped" from a CAMHD facility.  See Pltfs.' CSOF, Decl. of Eric A. Seitz ("Seitz Decl."), Exh. 3 (emails from February and March 2020 concerning B.S.'s transportation and placement in Hawai`i) at PageID.173.  B.S. was subsequently admitted to the Family Treatment Center at the Queens Medical Center.  See Pltfs.' CSOF at ¶ 19; Defs.' Responsive CSOF at ¶ 19 (partially disputing Pltfs.' CSOF ¶ 19 on other grounds).

On February 7, 2020, Plaintiffs filed a due process request.  See Seitz Decl., Exh. 4 (Order Granting Petitioner's Motion for Entry of 'Stay Put' Order) at 2.  On March 11, 2020, a hearings officer for the State Department of the Attorney General's Office of Dispute Resolution issued an Order Granting Petitioners' Motion for Entry of 'Stay Put' Order, ordering that B.S. remain placed at a private residential facility while the due process request was pending.  See generally id.  In May 2020, B.S. was transported to a residential treatment program in Kansas.  See Pltfs.' CSOF at ¶ 21; Defs.' Responsive CSOF at

¶ 21 (partially disputing Pltfs.' CSOF at ¶ 21 on other grounds).

In Plaintiffs' Motion, Plaintiffs seek summary judgment against Defendants as to the issue of liability because, according to Plaintiffs, Defendants violated 20 U.S.C. § 1415(j) when they changed B.S.'s then-current educational placement even though B.S.'s IEP team had not changed his placement.  See Pltfs.' Motion, Mem. of Law at 2.

In Defendants' Motion for Summary Judgment, Defendants argue summary judgment is appropriate because: (1) Dr. Hay is an improper defendant for any Fourteenth Amendment claim; (2) there is no private right of action under Article I of the Hawai`i Constitution; (3) Dr. Hay and Dr. Humphrey are improper defendants under the IDEA and Rehab Act; (4) any claim under the IDEA fails because Plaintiffs did not exhaust the administrative remedy process; (5) Dr. Hay is entitled to qualified immunity; and (6) Plaintiffs' medical malpractice claim fails because Plaintiffs have not provided any expert opinion.  See Defs.' Motion for Summary Judgment at PageID.197-98.

## DISCUSSION

### I.   Defendants' Motion to Strike

On June 21, 2023, Defendants filed their Motion to Strike Plaintiffs' Motion for Partial Summary Judgment as to Liability [DKTS 31-32] ("Motion to Strike").  [Dkt. no. 44.]  On

July 10, 2023, Plaintiffs filed their response in opposition to
the Motion to Strike ("Opposition to Motion to Strike").  [Dkt.
no. 53.]  Defendants filed their reply on July 19, 2023.  [Dkt.
no. 58.]  The Court found this matter suitable for disposition
without a hearing pursuant to Local Rule 7.1(c).  See Minute
Order - EO, filed 6/27/23 (dkt. no. 46).

      In the Motion to Strike, Defendants request that the
Court strike Plaintiffs' Motion because Plaintiffs purportedly
failed to comply with Local Rule 7.8 when they did not meet and
confer with Defendants regarding Plaintiffs' Motion.  See Motion
to Strike at 3-6.  Plaintiffs argue they complied with Local
Rule 7.8.  See generally Pltfs.' Opp. to Motion to Strike.
After reviewing the parties' submissions, the Motion to Strike
ultimately amounts to he-said-she-said.  Moreover, in light of
the importance of the issues raised in Plaintiffs' Motion, the
Court declines to make any finding regarding the contentions
raised in connection with the Motion to Strike.  The Motion to
Strike is therefore denied.

## II.  **Plaintiffs' Motion**

      Plaintiffs' Motion consists of only two and a half
pages of argument as to why they are entitled to summary
judgment as to the issue of liability.  See Pltfs.' Motion, Mem.
of Law at 1-3.  Plaintiffs make arguments that Defendants are
not entitled to summary judgment as to their claims against

Defendants under the Fifth and Fourteenth Amendment, Rehab Act, Hawai`i Constitution, or their medical malpractice claim, but Plaintiffs do not explain why summary judgment should be granted in their favor as to those claims.  Plaintiffs vaguely argue Defendants violated § 1415(j) because Defendants unilaterally removed B.S. from Capstone and transferred him to Hawai`i, even though his IEP team had not changed his placement.  See id. at 2.  This argument seemingly relates to Plaintiffs' IDEA claim, but it is too vague for the Court to make a ruling that they have carried their burden on summary judgment.  To the extent that Plaintiffs' IDEA claim is that B.S.'s transfer from Capstone violated B.S.'s IEP and, therefore, the IDEA, Plaintiffs do not provide evidence or legal argument as to how Defendants violated the IEP.  For instance, Plaintiffs have not established that B.S.'s IEP required him to be placed at Capstone or any other secure residential treatment program on the mainland.

Moreover, it appears Plaintiffs contend that Defendants violated B.S.'s right to a free appropriate public education ("FAPE") under the IDEA, and they therefore seek to vindicate such a violation.  Plaintiffs' IDEA claim against Defendants is confusing because Plaintiffs initially requested a due process hearing under the IDEA **against the DOE**.  See Defs.' CSOF, Decl. of Custodian of Records - Michelle M.L. Puu ("Puu

Decl."),[4] Sealed Exh. B at 2-3 (Request for IDEA Impartial Due Process Hearing, signed by Mrs. Shores on 2/5/20).[5]  On April 17, 2020, Plaintiffs withdrew their complaint with the Office of Dispute Resolution.  See id. at 50-52 (Withdrawal of Amended Complaint).  On the same day, the hearings officer granted Plaintiffs' withdrawal and the case was dismissed with prejudice "due to a settlement agreement reached between the parties." [Id. at 54 (second page of the Order of Dismissal).]  Plaintiffs now pursue an IDEA claim against the DOH for the purported denial of B.S.'s FAPE.  Because Plaintiffs IDEA claim seeks relief for the denial of FAPE, they must exhaust the IDEA's procedures.  See 20 U.S.C. § 1415(l); see also Fry v. Napoleon Cmty. Schs., 580 U.S. 154, 165 (2017) ("Section 1415(l) requires that a plaintiff exhaust the IDEA's procedures before filing an action under the ADA, the Rehabilitation Act, or similar laws when (but only when) her suit "seek[s] relief that is also available" under the IDEA." (alteration in Fry)).

Plaintiffs have not proffered any evidence that they have exhausted their administrative remedies under the IDEA. Moreover, Plaintiffs seek monetary damages and, thus, insofar as

---

[4] Michelle M.L. Puu is a Supervisor of the Office of Dispute Resolution, Department of the Attorney General, State of Hawai`i.  [Puu Decl. at ¶ 1.]

[5] Exhibit B was filed under seal on April 25, 2023.  [Dkt. no. 38.]

they bring a claim under the IDEA, that claim is improper because the IDEA does not allow for an award of ordinary monetary damages.  See McIntyre v. Eugene Sch. Dist. 4J, 976 F.3d 902, 910-11 (9th Cir. 2020).  It is therefore absolutely clear that Plaintiffs fail to "identify[] each claim . . . or part of each claim . . . on which summary judgment is sought," and they have neither "show[n] that there is no genuine dispute as to any material fact . . . [nor that they are] entitled to judgment as a matter of law."  See Fed. R. Civ. P. 56(a). Plaintiffs' Motion must be denied.

## III. __Defendants' Motion for Summary Judgment__

### A. __Plaintiffs' Count I__

#### 1. __Section 1983 Claims__

Plaintiffs allege their Fifth and Fourteenth Amendment claims against Dr. Hay in her individual and official capacity and against Dr. Humphrey in his official capacity.  It is undisputed that, at the time of the alleged events, both Dr. Hay and Dr. Humphrey were DOH employees.  See Defs.' CSOF at ¶¶ 11-13; Pltfs.' Responsive CSOF at pg. 2.  Plaintiffs' claims against Dr. Hay and Dr. Humphrey in their official capacities are claims against the State.  See Hafer v. Melo, 502 U.S. 21, 25 (1991) ("Suits against state officials in their official capacity therefore should be treated as suits against the State." (citation omitted)).  "[N]either a State nor its

12

officials acting in their official capacities are 'persons' under § 1983." Will v. Michi. Dep't of State Police, 491 U.S. 58, 71 (1989).

Insofar as Plaintiffs bring Fifth Amendment due process claims against Dr. Hay in either her individual capacity or her official capacity, and Dr. Humphrey in his official capacity, those claims necessarily fail as a matter of law because "the Fifth Amendment's due process clause only applies to the federal government." See Bingue v. Prunchak, 512 F.3d 1169, 1174 (9th Cir. 2008) (some citations omitted) (citing Betts v. Brady, 316 U.S. 455, 462, 62 S. Ct. 1252, 86 L. Ed. 1595 (1942)). Because Plaintiffs are not raising claims against the federal government, summary judgment must be granted in favor of Defendants as to Plaintiffs' Fifth Amendment claims against them.

Further, because Plaintiffs bring their Fourteenth Amendment due process claims against Defendants in their official capacities, the State is entitled to Eleventh Amendment immunity. See Will, 491 U.S. at 66 ("That Congress, in passing § 1983, had no intention to disturb the States' Eleventh Amendment immunity and so to alter the federal-state balance in that respect was made clear . . . ."). The Fourteenth Amendment claims against Defendants in their official capacities are therefore improper insofar as Plaintiffs seek damages. Summary

13

judgment in favor of Defendants is warranted as to those claims.
To the extent that Plaintiffs seek declaratory relief, it
appears they seek declaratory relief for a **past** violation that
is not ongoing.  Because they do not seek prospective relief,
Plaintiffs' Fourteenth Amendment claims against Defendants in
their official capacities fail.  See Jamul Action Comm. v.
Simermeyer, 974 F.3d 984, 994 (9th Cir. 2020) (stating that, for
the exception to Eleventh Amendment Immunity to apply to a claim
seeking injunctive and/or declaratory relief, "a plaintiff must
point to **threatened or ongoing** unlawful conduct by a particular
governmental officer" (emphasis added)).  Accordingly, summary
judgment in favor of Defendants is appropriate as to Plaintiffs'
Fourteenth Amendment claims against Defendants in their official
capacities.

     As to Plaintiffs' Fourteenth Amendment due process
claim against Dr. Hay in her individual capacity, Plaintiffs do
not allege whether the claim is regarding substantive or
procedural due process.  Regardless,

> "[i]n a § 1983 action, the plaintiff must . . .
> demonstrate that the defendant's conduct was the
> actionable cause of the claimed injury."  Harper
> v. City of Los Angeles, 533 F.3d 1010, 1026 (9th
> Cir. 2008).  Such causation "can be established"
> either "by some kind of direct personal
> participation in the deprivation" or "by setting
> in motion a series of acts by others which the
> actor knows or reasonably should know would cause
> others to inflict the constitutional injury."
> Gini v. Las Vegas Metro. Police Dep't, 40 F.3d

> 1041, 1044 (9th Cir. 1994) (quoting <u>Merritt v.
> Mackey</u>, 827 F.2d 1368, 1371 (9th Cir. 1987)).
> "To meet [§ 1983's] causation requirement, the
> plaintiff must establish both causation-in-fact
> and proximate causation." <u>Harper</u>, 533 F.3d at
> 1026 . . . . "Without [such] caus[ation], there
> is no section 1983 liability." <u>Van Ort v. Est.
> of Stanewich</u>, 92 F.3d 831, 837 (9th Cir. 1996).

<u>Chaudhry v. Aragón</u>, 68 F.4th 1161, 1169 (9th Cir. 2023) (some

alterations in <u>Chaudhry</u>) (footnotes omitted).

Plaintiffs allege the due process violation occurred

when Defendants "unilaterally, arbitrarily, and deliberately

den[ied] B.S. adequate, reasonable, and essential programs and

services including, but not limited to the 'special education

and related aids and services' provided to students with

disabilities to 'meet [the] individual education needs of [those

students] as adequately as the needs of non[disabled] persons

are met.[']" [Complaint at ¶ 23 (quoting 34 C.F.R.

Section 104.33(b)(1)(i)).] The Court need not make any finding

as to whether a constitutional violation occurred because, even

if Plaintiffs could show a constitutional violation, there is no

genuine issue of material fact as to whether Dr. Hay caused such

a violation.

Under Hawai`i Administrative Rule § 8-60-29,[6] the DOE

---

[6] For the purposes of Title 8 Chapter 60 of the Hawai`i
Administrative Rules, the term "'[d]epartment' means the state
department of education . . . ." Haw. Admin. R. § 8-60-2.

shall ensure that a student with a disability who
is placed in or referred to a private school or
facility by the [DOE]:

>(1)  Is provided special education and
>related services:

>>(A)  In conformance with an IEP that
>>meets the requirements of sections 8-
>>60-44 through 8-60-49; and

>>(B)  At no cost to the parents;

>(2)  Is provided an education that meets the
>standards that apply to education provided
>by the [DOE] including the [DOE]'s
>responsibility to ensure the provision of a
>FAPE and the requirements of the [IDEA]; and

>(3)  Has all of the rights of a student with
>a disability who is served by the [DOE].

"In implementing section 8-60-29, the [DOE] shall monitor

compliance through procedures such as written reports, on-site

visits, and parent questionnaires."  Haw. Admin. R. § 8-60-30.

Although, in Hawai`i, the DOE and the DOH are required

"to work together to provide the services necessary to enhance

the likelihood of positive learning outcomes for students with

disabilities, . . . . [u]ltimately, . . . [the] DOE is

responsible for ensuring that its students receive appropriate

special education services."  Mark H. v. Hamamoto, 620 F.3d

1090, 1093 (9th Cir. 2010).

Here, Dr. Hay would sometimes participate in B.S.'s

IEP meetings.  See Hay Decl. at ¶ 11.  In November 2019, Dr. Hay

completed a clinical psychological evaluation of B.S. "to make

16

recommendations for treatment and educational services."  [Seitz
Decl., Exh. 1 (Clinical Psychological Evaluation, report dated
11/18/19) at 1.]  "By at least December of 2019, B.S.'[s]
parents . . . were aware that B.S.'[s] placement at Capstone
required termination."  [Defs.' CSOF at ¶ 14; Pltfs.' Responsive
CSOF at pg. 2.]  Between November 2019 and January 2020, B.S.'s
IEP team discussed potential new placements.  See Pltfs.' CSOF
at ¶ 8; Defs.' Responsive CSOF at ¶ 8 (partially disputing
Pltfs.' ¶ 8 on other grounds).  Capstone eventually requested to
discharge B.S. from its facility as soon as possible.  See
Humphrey Decl., Exh. E (Notice of Action).  Parents were aware
that it was Capstone's "directive."  See Hay Decl., Exh. D
(January 31, 2020 emails between Dr. Hay and Mrs. Shores) at 1.

　　　　Once Capstone decided to discharge B.S., Dr. Hay
attempted to acquire Parents' consent to authorize a new
placement.  See e.g., id. at 2 ("To pursue either of these
options, we would first need your consent.").  In finding out
that Capstone was discharging B.S., Parents requested an
emergency IEP team meeting.  See id. ("This meeting was called
as an emergency meeting yesterday . . . .  However, I understand
that there was not a lot of notice as this meeting is in
reaction to the information we discussed on Wednesday.  Thanks
for the information, we will take it to the IEP meeting
today.").  Even though Dr. Hay could not attend the emergency

17

IEP team meeting, Dr. Hay offered to reschedule the meeting, and
Mrs. Shores declined because Parents "want[ed] to talk to **DOE**
since the time is so short on B[.S.]'s placement and the
directive from [Capstone] that he should be moved [as soon as
possible]."  [Id. at 1 (emphasis added).]

Viewing the "evidence in the light most favorable to
Plaintiffs as the nonmoving parties," see Harris v. Cnty. of
Orange, 17 F.4th 849, 855 (9th Cir. 2021) (brackets, quotation
marks, and citation omitted), there is not a genuine dispute of
material fact as to whether Dr. Hay's "conduct was the
actionable cause of the claimed injury," see Chaudhry, 68 F.4th
at 1169 (quotation marks and citation omitted).  There is no
evidence that Dr. Hay caused Capstone's request that B.S. be
transferred as soon as possible.  Dr. Hay worked for the DOH —
not Capstone or the DOE.  Once Capstone decided to discharge
B.S., Dr. Hay attempted to work with Parents to have B.S.
transferred to RCSP.

Plaintiffs also appear to take issue with B.S. being
sent back to Hawai`i after being discharged from Capstone.  See
e.g., Complaint at ¶ 17.  Insofar as Plaintiffs' Fourteenth
Amendment due process claim stems from those events, summary
judgment in favor of Dr. Hay is also appropriate.  Under Hawai`i
Revised Statute § 350E-1, which is the terms and provision of

section in Hawaii's enactment of the Interstate Compact on

Placement of Children:

> The sending agency shall retain jurisdiction
> over the child sufficient to determine all
> matters in relation to the custody, supervision,
> care, treatment and disposition of the child
> which it would have had if the child had remained
> in the sending agency's state, until the child is
> adopted, reaches majority, becomes self-
> supporting or is discharged with the concurrence
> of the appropriate authority in the receiving
> state.  Such jurisdiction shall also include the
> power to effect or cause the return of the child
> or its transfer to another location and custody
> pursuant to law. . . . .

Haw. Rev. Stat. § 350E-1, Art. V(a)

Here, an ICPC request was completed for B.S.  At the

time of B.S.'s transfer to Capstone, the ICPC stated that B.S.'s

"Current Legal Status" was "Parent Relative

Custody/Guardianship."  [Ledoux Decl., Exh. F at 1 (B.S.'s ICPC

Request).]  B.S.'s ICPC Report stated B.S. was being transferred

from Capstone to the sending state, *i.e.*, Hawai`i, because his

treatment was completed.  See id. at 2 (B.S.'s ICPC Report).

Dr. Hay attempted to receive Parents' consent to have B.S.

transferred to RCSP.  See, e.g., Hay Decl., Exh. H (email from

Dr. Hay to Parents, dated 2/10/20).  In a text message to

Dr. Hay, Mr. Shores stated: "I'm in a meeting with my boss.

What is the emergency?  Our lawyer is on a flight to the

mainland right now so we cannot get legal counsel to sign any

additional consent forms until sometime tomorrow."  [Id., Exh. I

19

(text messages between Dr. Hay and Parents from 2/12/20) at 2.]
Dr. Hay replied, stating: "Okay, if you cannot sign any
additional consents, we will have to have you come pick [B.S.]
up or I will have to call CWS." [Id. at 1.] Dr. Hay did not
receive a response from the Parents. Dr. Hay then contacted
CWS. See Hay Decl. at ¶¶ 43-44.

      Under § 350E-1 Art. V(a) and B.S.'s ICPC Request,
because Capstone discharged B.S. and another placement was not
secured, B.S. was required to be transferred to Hawai`i.
Moreover, although Hawai`i retained jurisdiction under the ICPC,
B.S.'s parents retained their legal custody of B.S. Although
the timing was not ideal for the parties, because Parents
neither consented to a placement nor sought physical custody of
B.S. when he arrived in Hawai`i, Dr. Hay had no other option
than to contact CWS. See Hay Decl. at ¶ 44.

      There is insufficient evidence to create a genuine
issue of fact for trial as to whether Dr. Hay was the cause-in-
fact of B.S. getting discharged from Capstone or being sent back
to Hawai`i. Conversely, the evidence shows Dr. Hay requested
the Parents to either complete consent forms so that B.S. could
be placed at another facility or take custody of B.S. after he
arrived in Hawai`i. Parents refused both requests because, in
part, they wanted to consult their attorney first. But,
Dr. Hay's attempts and contacts with Parents do not, without

more, suggest Dr. Hay was the moving force behind B.S.'s transfer from Capstone to Hawai`i.  Accordingly, summary judgment is granted in favor of Dr. Hay to the extent that Plaintiffs raise a due process claim under the Fourteenth Amendment against her in her individual capacity based upon those events.

### 2.   Claim Under the Hawai`i Constitution

Plaintiffs also bring a due process claim under Article I Section 5 of the Hawai`i Constitution.  See Complaint at ¶ 24.  Insofar as Plaintiffs raise a due process claim for damages under the Hawai`i Constitution, that claim fails as a matter of law and, therefore, summary judgment in favor of Defendants is warranted.  See Davis v. Abercrombie, Civ No. 11-00144 LEK-BMK, 2014 WL 3809499, at *16 (D. Hawai`i July 31, 2014) (predicting that the Hawai`i Supreme Court "would not recognize a claim for damages arising directly under the Hawai`i State Constitution").  Moreover, it is unlikely Plaintiffs seek declaratory relief based on their due process claim under the Hawai`i Constitution.  Plaintiffs prayed for the following relief:

> 1)   The entry of a judgment declaring that the Defendants' unilateral removal of B.S. from his I.E.P. placement and transportation of B.S. back to Hawaii without any suitable placement were unlawful and violated rights guaranteed to the Plaintiffs and B.S. by the **Rehabilitation Act,**

> **I.D.E.A**, and **42 U.S.C. Section 1983**, <u>et seq</u>,
> <u>inter alia</u>.

[Complaint at pg. 9 (some emphases in original).]  Because
Plaintiffs fail to include their due process claim under the
Hawai`i Constitution in their prayer for declaratory relief, it
does not appear that they seek declaratory relief for that
claim.  But, even if Plaintiffs intended to seek declaratory
relief for their Hawai`i Constitution claim, their claim is
foreclosed because Plaintiffs are not seeking prospective relief
although they are seeking general damages, special damages, and
attorney's fees, <u>see</u> <u>id.</u>, and, therefore, sovereign immunity
applies, <u>see</u> <u>Bush v. Watson</u>, 81 Hawai`i 474, 481, 918 P.2d 1130,
1137 (1996) (stating Hawai`i Supreme Court has adopted exception
to sovereign immunity as stated in <u>Ex parte Young</u>, 209 U.S. 123
(1908)); <u>see also</u> <u>Off. of Hawaiian Affs. v. Kondo</u>, 153 Hawai`i
170, 178, 528 P.3d 243, 251 (2023) ("The State's sovereign
immunity does not bar actions seeking prospective declaratory or
injunctive relief.").  Accordingly, summary judgment is granted
in favor of Defendants for Plaintiffs' due process claim under
the Hawai`i Constitution.

### 3.   <u>Section 504 of the Rehab Act Claim</u>

At the onset, Plaintiffs' Rehab Act claim is unclear.
They allege in the introduction to their Complaint that
Defendants "violat[ed] [the] rights guaranteed to Plaintiffs and

B.S. by the Rehabilitation Act of 1973, the Individuals with
Disabilities Act, and 42 U.S.C. Section 1983 . . . ."
[Complaint at pg. 2.]  They further allege "[t]his Court has
jurisdiction to hear this matter pursuant to the Rehabilitation
Act of 1973, Section 504, for deprivation of civil rights
pursuant to 42 U.S.C. Sections 1983, et seq., and under 28
U.S.C. Section 1331 and 1343, *inter alia*, . . . ."  [Id. at ¶ 6.
(emphases in original)]  To the extent that Plaintiffs are
attempting to enforce rights under the Rehab Act through a
§ 1983 action, such a claim is precluded.  See Vinson v. Thomas,
288 F.3d 1145, 1156 (9th Cir. 2002) ("a plaintiff cannot bring
an action under 42 U.S.C. § 1983 against a State official in her
individual capacity to vindicate rights created by . . .
section 504 of the Rehabilitation Act."); see also Jefferies v.
Albert, Civ. No. 09-00156 JMS/KSC, 2009 WL 4064799, at *7 (D.
Hawai`i Nov. 24, 2009) ("As to the . . . Rehabilitation Act,
Plaintiffs cannot recover under § 1983").  Insofar as Plaintiffs
attempt to enforce a right directly under the Rehab Act, the
Court addresses that claim, based on the limited allegations in
the Complaint.

      Section 504 of the Rehab Act states, in pertinent
part:

          No otherwise qualified individual with a
          disability in the United States, as defined in
          section 705(20) of this title, shall, solely by

23

> reason of her or his disability, be excluded from
> the participation in, be denied the benefits of,
> or be subjected to discrimination under any
> program or activity receiving Federal financial
> assistance . . . .

29 U.S.C. § 794(a).  Plaintiffs' Rehab Act claim against Dr. Hay
in her individual capacity fails as a matter of law because
"Section 504 of [the Rehab Act] do[es] not authorize claims
against State officials in their individual capacities."  See
Hayes v. Voong, 709 F. App'x 494, 495 (9th Cir. 2018) (citing
Vinson v. Thomas, 288, F.3d 1145, 1156 (9th Cir. 2002)).

    Because Plaintiffs bring their § 504 claim against
Dr. Hay and Dr. Humphrey in their official capacities, that
claim is treated as a claim against the DOH.  See Gomez v.
Vernon, 255 F.3d 1118, 1126 (9th Cir. 2001) ("A suit, like this
one, against a governmental officer in his official capacity is
equivalent to a suit against the governmental entity itself."
(citation omitted)).  Section 504 applies to the DOH if it is a
state department that receives federal funding.  See 29 U.S.C.
§ 794(b)(1)(A).

        To prevail on a Section 504 claim, a
        plaintiff must show:

            (1)  he is a qualified individual with a
            disability;

            (2)  the school receives federal financial
            assistance; and,

            (3)  he was excluded from participating in,
            denied the benefits or services of, or

24

>           subject to discrimination at the school
>           solely by reason of his disability.
>
>           A.G. v. Paradise Valley Unified School Dist.
>           No. 69, 815 F. 3d 1195, 1204 (9th Cir. 2016); Doe
>           v. State of Hawaii Dep't of Education, 351 F.
>           Supp. 2d 998, 1012 (D. Haw. 2004).
>
>                To receive damages pursuant to Section 504,
>           a plaintiff must show the public entity acted
>           with intent to deny him the benefits of a public
>           education.  T.B. ex rel. Brenneise v. San Diego
>           Unified School Dist., 806 F.3d 451, 467 (9th Cir.
>           2015).  Intent is demonstrated by showing either
>           intentional discrimination or deliberate
>           indifference.  Mark H. v. Hamamoto, 620 F.3d
>           1090, 1097-98 (9th Cir. 2010).
>
>                Deliberate indifference requires both
>           knowledge that a harm to a federally protected
>           right is substantially likely, and a failure to
>           act upon that likelihood.  A.G., 815 F.3d at 1204
>           (citing Duvall v. Cnty. of Kitsap, 260 F.3d 1124,
>           1135 (9th Cir. 2001)).

Ricks v. Matayoshi, CIV. NO. 16-00044 HG-KSC, 2017 WL 1025170,

at *6 (D. Hawai`i Mar. 16, 2017).

        Here, there is no evidence that the DOH initiated or

caused B.S.'s transfer from Capstone.  The DOH, therefore, could

not have "acted with intent to deny him the benefits of a public

education" because it was not the "entity" that caused B.S.'s

discharge from Capstone.  See id.  Plaintiffs' Rehab Act claim

fails, then, insofar as the claim is based on the DOH

purportedly discharging B.S. from Capstone.

        Plaintiffs' Rehab Act claim also fails because they

have not proffered sufficient evidence to raise a genuine issue

of fact for trial as to whether B.S. was transferred from
Capstone to Hawai`i "solely by reason of his disability."  See
id. (citation omitted).  Capstone discharged B.S. and, pursuant
to his ICPC, he was transferred to Hawai`i as the sending state.
There is no evidence that the DOH subjected B.S. to any
discrimination, let alone discrimination that was based solely
upon B.S.'s disabilities.  To the extent that Plaintiffs allege
disability discrimination occurred because the aids and services
provided for B.S.'s special education and individual education
needs were inadequate, see Complaint at ¶ 23, there is no
genuine issue of material fact that the DOE – not the DOH – was
"responsible for ensuring that [B.S.] receive[d] appropriate
special education services."  See Mark H., 620 F.3d at 1093.
Even if the DOH shares that responsibility, there is not a
genuine issue of material fact as to whether the DOH acted
intentionally or with deliberate indifference.  Accordingly,
summary judgment is granted in favor of Defendants in their
official capacities as to Plaintiffs' Rehab Act claim.

      **4.**   **IDEA Claim**

      There is not a genuine issue of material fact as to
Plaintiffs' IDEA claim because they did not exhaust their
administrative remedies.  See supra Discussion Section II.
In any event, insofar as Plaintiffs seek a remedy for a
purported violation of B.S.'s right to a FAPE, their claim

26

against DOH necessarily fails because the DOE is responsible for a FAPE.  As such, summary judgment is granted in favor of Defendants as to Plaintiffs' IDEA claim.

**B.    Plaintiffs' Count II – Medical Malpractice**

Under 28 U.S.C. § 1367(c)(3): "The district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction . . . ."  Because summary judgment has been granted in favor of Defendants as to all of the federal claims, and the Court's jurisdiction is based on federal question jurisdiction, the Court declines to exercise supplemental jurisdiction over Plaintiffs' state law medical malpractice claim.

But, the Court points out that, if it had chosen to rule on the medical malpractice claim, Plaintiffs fail to present any expert testimony on the requisite standard of care required for a medical negligence claim.  See Craft v. Pebble, 78 Hawai`i 287, 298, 893 P.2d 138, 149 (1995).  Giving Plaintiffs the benefit of the doubt, it appears they invoke the "common knowledge" exception.  See, e.g., Opp. to Defs.' Motion for Summary Judgment at 3 ("Unlike typical medical cases where the diagnoses or performance of medical procedures are at issue, in this case the finders of fact do not need and will not benefit from the opinions of an expert who will testify that by

27

acting unlawfully the Defendants also committed malpractice."). To the extent that Plaintiffs invoke this exception, their claim against Dr. Hay is essentially a negligence claim.  See Craft, 78 Hawai`i at 298, 893 P.2d at 149 ("When the 'common knowledge' exception is applied, the medical malpractice case transforms into an ordinary negligence case, thus obviating the necessity of expert testimony to establish the applicable standard of care.  This exception, however, is rare in application." (citations omitted)).  Even so, there is no evidence offered by Plaintiffs suggesting that Dr. Hay was negligent.  If the Court had exercised supplemental jurisdiction and ruled on Plaintiffs' medical malpractice claim, it would likely have granted summary judgment in favor of Dr. Hay.

## CONCLUSION

On the basis of the foregoing, Defendants' Motion to Strike Plaintiffs' Motion for Partial Summary Judgment as to Liability [DKTS 31-32], filed June 21, 2023, is HEREBY DENIED; Plaintiffs' Motion for Partial Summary Judgment as to Liability, filed April 24, 2023, is HEREBY DENIED; and Defendants' Motion for Summary Judgment on All Claims, filed April 24, 2023, is HEREBY GRANTED IN PART AND DENIED IN PART.  Defendants' Motion for Summary Judgment is GRANTED to the extent that summary judgment is GRANTED in favor of Defendants as to Count I. Defendants' Motion for Summary Judgment is DENIED to the extent

that the Court declines to exercise supplemental jurisdiction over Plaintiffs' medical malpractice claim in Count II.  The Clerk's Office is directed to enter judgment and close the case on **September 5, 2023,** unless a timely motion for reconsideration is filed.

In light of the Court's rulings, the September 18, 2023 nonjury trial date and all trial-related dates and deadlines are VACATED.  If reconsideration of the instant Order is granted, a trial re-setting conference will be held.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, August 21, 2023.



/s/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge

MICHELLE SHORES, ET AL. VS. NIKITA HAY, PSY.D., ET AL; CV 21-00455 LEK-RT; ORDER:  DENYING DEFENDANTS' MOTION TO STRIKE; DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT; AND GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT